UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-CR-80182-ROSENBERG/REINHART

UNITED STATES OF AMERICA,

vs.

CARSON DEREK WILLIAMS,

       **Defendant.**
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE

The United States, by and through the undersigned Assistant United States Attorney, hereby files this Response to Defendant Carson Derek Williams' ("Williams" or "Defendant") motion for a downward variance. For the reasons stated below, this Court should deny the defendant's motion that is premised on the argument that the Court should reject the application of the methamphetamine purity guidelines because the guidelines are not supported by empirical evidence. Pursuant to *United States v. Kimbrough*, 552 U.S. 85, 128 S. Ct. 558 (2007), the Court is not required to consider policy disagreements with the sentencing guidelines and the defendant has not cited to any case from the Supreme Court or Eleventh Circuit in support of his position that there is a categorical policy disagreement with regard to the methamphetamine guidelines. Furthermore, assuming *arguendo* that there is a policy disagreement, a sentence of 30 months' imprisonment is warranted based on the § 3553(a) factors, specifically, the nature and circumstances of the offense and the seriousness of the offense.

The Government therefore recommends this Court deny the defendant's motion for a downward variance premised on the rejection of the methamphetamine guidelines and sentence

the defendant to a term of imprisonment of 30 months.

I. **FACTUAL BACKGROUND**

A. **Offense Conduct**

In April 2022, the DEA began investigating the distribution of crystal methamphetamine by a retail dealer operating in West Palm Beach, FL. The investigation progressed and in or around July 2022, the DEA identified co-defendant Victoria Williams ("V.Williams") as distributing crystal methamphetamine to the retail dealer's suppliers. Over the course of the next several months, law enforcement conducted several controlled purchases of crystal methamphetamine from co-defendant V.Williams. On April 6, 2023, agents began intercepting the wire and electronic communications of a telephone number used by co-defendant V.Williams to communicate primarily with co-conspirators. During those interceptions, agents determined that co-defendant V.Williams used a second telephone number to facilitate her crystal methamphetamine distribution as well. As such, on May 5, 2023, agents renewed the interception of co-defendant V.Williams' first phone and on May 6, 2023, initiated the interception of her second phone.

During the period in which agents intercepted telephones used by co-defendant V.Williams, agents identified several co-conspirators, including the defendant. On April 17, 2023, co-defendant V.Williams sent a text message to the defendant and stated, "Please Zelle the 260 I'm trying to pay my light bill online please." Based on the totality of the investigation, $260.00 is consistent with the price for one ounce of crystal methamphetamine and the quantity is intended for further distribution. The defendant later sent a text message to co-defendant V.Williams and stated, "Did you get the Zelle? I'm leaving my house now will call you when I'm almost there." The defendant thereafter sent multiple text messages to co-defendant V.Williams, but did not receive a response. The following day, on April 18, 2023, the defendant called co-defendant V.Williams and the following call, in relevant portions, was intercepted. The defendant stated, "You alright though" and co-defendant V.Williams responded,

"Yeah, of course. It's good. I made sure. My uncle already has it. I was waitin on you to call me." Later in the call, the defendant asked, "What street do I turn on?" and co-defendant V.Williams stated, "6th Court." Later that evening, co-defendant V.Williams made an outgoing call to the defendant and explained that she could not wait for the defendant to arrive. Co-defendant V.Williams stated, "I am I'm going to hide it now, cause I have to," "it's going to be on the bumper, when you get out the car you will see it," and "It's a black car in front of the church, right by parked right next to the van, you'll see it in the picture." Co-defendant V.Williams then sent a picture, via text message, to the defendant that appeared to show a bag of narcotics hanging from the side of a driver side door of a vehicle. Agents conducting physical surveillance at 2850 NW 6th Court, Fort Lauderdale, FL, observed co-defendant V.Williams place an item in a vehicle near the residence and depart the area. Following co-defendant V.Williams' departure, agents approached the vehicle and seized a bag containing crystal methamphetamine that was hanging out of the driver side door. A short time later, agents conducting physical surveillance observed the defendant arrive to the vehicle and begin to search around the area of the vehicle. At approximately this same time, the following call, in relevant portions, was intercepted between the defendant and co-defendant V.Williams:

> Defendant: Hey. The black car is parked behind the van? [Voices overlap]
> V.Williams: Uh-huh. Look in the driver door.
> Defendant: Oh, you mean I can open the door? [Voices overlap]
> V.Williams: [Unintelligible] open the door, you don't see it? You don't have to open it.
> Defendant: No, there's no... there's nothing there.
> V.Williams: There's...?
> Defendant: There's nothing there.
> V.Williams: There's not... is a banged up door, right?
> Defendant: Yeah, but there's nothing there.
> V.Williams: You've seen the picture I have sent you?
> Yeah, yeah! I'm standing right in front of the car, there's nothing in the Defendant: driver's door.
> V.Williams: There's... you see how in the picture I sent you it was hanging out the door?

Defendant: Yeah, there's nothing there, momma, I'm trying to tell you.

The substance seized on April 18, 2023 was tested by the DEA Southeast Laboratory and was confirmed to be methamphetamine with a net weight of 28.0 grams and had a purity of 98% +/- 6%.

During the interception period of V.Williams' telephones, agents intercepted approximately thirty five pertinent calls and text messages between the defendant and V.Williams.

### B. Presentence Investigation Report-Methamphetamine Calculation

The United States Probation Office prepared a thorough PSI, and relevant to this motion, calculated that the defendant was responsible for at least 20 grams but less than 35 grams of "Ice" and therefore has a base offense level of 26 (PSI ¶ 92).

### C. Williams' Objection to the PSI and Motion for a Downward Variance

Williams argues that a downward variance is warranted because the methamphetamine purity guidelines are not empirically based, they overemphasize quantity and purity, and underemphasize criminal role (DE: 462:1).

## II. A Sentence of 30 Months' Imprisonment is Sufficient but Not Greater Than Necessary and A Downward Variance is Not Warranted

*Kimbrough* allows a district court to vary from the guidelines based solely on its judgement that the policies are wrong; however, *Kimbrough* did not require district courts to exercise such discretion. The defendant does not cite any case from the Supreme Court or from the Eleventh Circuit, holding that the 10:1 ratio in sentence severity between Ice and less pure forms of methamphetamine is greater than necessary to achieve the purposes of sentencing under § 3553(a). Furthermore, assuming *arguendo*, that the Court does disagree with the guideline range indicated by the drug quantity table, the § 3553(a) factors warrant a sentence of 30 months' imprisonment.

### A. Kimbrough Does Not Require the Court to Consider a Policy Disagreement and Eleventh Circuit Case Law Does Not Support a Policy Disagreement

In *Kimbrough*, "the Supreme Court upheld a district court's decision to vary downward from the crack cocaine guidelines based on a policy disagreement with the crack-to-powder ratio. Noting that the crack-cocaine guidelines did not take account of empirical data and national experience and produced disproportionately harsh sanctions. The Court held that it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence greater than necessary to achieve § 3553(a)'s purposes, even in a mine-run case." *United States v. Flores-Perez*, 749 Fed Appx. 793, 798 (11 Cir. 2018) (internal quotations omitted). While *Kimbrough* "empowered" district courts with discretion to vary downward based on a policy disagreement with the applicable guidelines, it did not "command" district courts to exercise this discretion. *See Dell v. United States*, 710 F.3d 1267, 1279 (11th Cir. 2013). Moreover, "the Supreme Court held that the lack of empirical evidence was one factor that a district court could consider in exercising its post-Booker right to depart from the guidelines." *United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010).

The defendant cites to other district and appellate courts in support of his argument that this Court should disregard the methamphetamine guidelines; however, just as some courts have found the methamphetamine guidelines to be flawed other courts have found that the methamphetamine guidelines are consistent with the sentencing principles. *United States v. Bostock*, 910 F.3d 348, 351 (7th Cir. 2018) ("There's no problem with holding Bostock, who did not receive a supervisory enhancement, responsible for the amount or purity of the drug he distributed…and the need to protect the community from high-quality methamphetamine made in industrial laboratories in other places, which had become a plague after police managed to shut down most of the local manufacturers."); *United States v. Campos*, 724 F. App'x 279, 280 (4th Cir. 2018) (unpublished) ("The district court considered Campos's argument but ultimately

rejected it, reasoning that purity levels may be accounted for in sentencing, as high-purity methamphetamine reflects the work of a more sophisticated organization that possesses the resources and ability to manufacture large quantities of high-grade methamphetamine.")

Moreover, the defendant does not cite any case from the Supreme Court, the Eleventh Circuit, or this Court, holding that the 10:1 ratio in sentence severity between Ice and less pure forms of methamphetamine is greater than necessary to achieve the purposes of sentencing under § 3553(a). To the contrary, the Eleventh Circuit has routinely affirmed sentences based upon the methamphetamine guidelines where the defendants made the same arguments set forth by the defendant. *United States v. Perez*, 515 Fed. Appx. 866 (11th Cir. 2013) (Affirming a 210-month guideline sentence where defendant argued that his sentence was substantively unreasonable relying on *Kimbrough*); *United States v. Trejo*, 624 Fed App'x 709 (11th Cir. 2015) (Affirming a 360-month sentence where defendant argued that the methamphetamine guidelines were substantively unreasonable because guidelines were unduly harsh and not based on empirical evidence); *United States v. Flores-Perez*, 749 Fed App'x 793 (11th Cir. 2018) (Affirming a 210-month guideline sentence where defendant argued that his sentence was substantively unreasonable relying on *Kimbrough*).

### B.  The 3553(a) Factors Warrant a Sentence of 30 Months' Imprisonment

The nature and circumstances of the offense as well as the seriousness of the offense warrant a sentence of 30 months' imprisonment.

The nature and circumstances of the offense involve the defendant conspiring and attempting to possess with intent to distribute crystal methamphetamine (PSI ¶¶ 23-27). The seriousness of this offense cannot be understated. The defendant engaged in a conspiracy to distribute a highly addictive and, at times lethal, narcotic. Moreover, methamphetamine overdoses

continue to rise and are second leading cause of drug-involved overdoses ranking only behind fentanyl.[1] The government concedes that the defendant is at the low end of the conspiracy hierarchy; however, the government respectfully submits to the Court that a recommendation at the low end of the applicable guideline range accounts for the defendant's role in the conspiracy.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny the defendant's motion and sentence the defendant to a term of imprisonment of 30 months.

Respectfully submitted,
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____
Brian D. Ralston
Assistant United States Attorney
Court ID No. A5502727
500 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
Tel: (561) 209-1068
Email: brian.ralston@usdoj.gov

---

[1] https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

> *s/ Brian Ralston*
> BRIAN D. RALSTON
> Assistant United States Attorney

## SERVICE LIST

**United States of America v. Williams, et al.**
**Case No. 23-CR-80182-RLR**
**United States District Court, Southern District of Florida**

| |
|---|
| **Brian Ralston**<br>U.S. Attorney's Office<br>500 S. Australian Avenue, Suite 400<br>West Palm Beach, Florida 33401<br>561-820-8711<br>Brian.Ralston@usdoj.gov<br>Attorney for USA |
| **Ronald S. Chapman**<br>400 Clematis Street<br>Suite 206<br>West Palm Beach, Florida 33401<br>561 832-4348<br>ronchapman@justiceflorida.com<br>Attorney for Carson Williams |